UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. _____ |
| | : | |
| v. | : | |
| | : | |
| LAKEAL O. ELLIS | : | VIOLATION: 18 U.S.C. § 1035 |
| | : | (False Statement Relating to Health Care |
| Defendant. | : | Matters) |

**INFORMATION**

The United States charges:

**COUNT ONE**

18 U.S.C. § 1035 – False Statement Relating to Health Care Matters

**INTRODUCTION**

**The Defendant**

1. Lakeal O. Ellis ("Ellis") was employed by a medical doctor ("the Doctor") intermittently from 1999 through 2006. The Doctor is an anesthesiologist who purports to offer pain management treatment in several offices, including an office in Hyattsville, Maryland. Ellis worked primarily in the Hyattsville office. Ellis worked as the Doctor's office manager. Her duties included preparing and submitting bills for medical services to patients as well as to Medicaid, Medicare, and private insurance companies. Ellis was involved with all aspects of the office during her employment with the Doctor.

**The Doctor's Billing Procedure**

2. The Doctor used an internal, pre-printed form known in the medical industry as a superbill, to indicate which medical procedures or services should be billed with respect to individual patients. The superbill contained a listing of procedure codes commonly

used by the Doctor. Each procedure code corresponded to a specific medical procedure or service and the codes were defined in the American Medical Association ("AMA") Physician's Current Procedure Terminology ("CPT") Guidebook and the BlueCross BlueShield Procedure Terminology Manual ("PTM").

3. Before bills for medical services were submitted, the Doctor would indicate on the superbill which billing codes should be submitted for each patient that was billed or on whose behalf a bill to an insurer was submitted. After she and others received the superbill from the Doctor, they would input the information from the superbill into a billing software package, which in turn generated an insurance claim form, known in the industry as a HCFA or CMS 1500 claim form. The claim form included several items of information, including the provider or supplier's Unique Provider Identification Number ("UPIN"), the beneficiary's name, and the procedure code for the type of service rendered. The claim form required the Doctor to certify that all of the information on the claim form was accurate.

4. Ellis and other employees of the Doctor then submitted the claim form by mail or electronically to Medicaid, Medicare, or the appropriate private insurance company for reimbursement.

5. If Medicaid, Medicare, or a private insurance company approved the claim, the amount of reimbursement to the Doctor was determined based on the procedure codes that were submitted.

## THE HEALTH CARE BENEFIT PROGRAMS

6. During the period covered by the information, the Doctor and his employees, including

Ellis, submitted claims for payment to Medicaid, Medicare, private insurance companies, and employee benefit plans. The private insurance companies included Aetna Inc. ("Aetna) and CareFirst BlueCross BlueShield ("Blue Cross"). The employee benefit plans included the Maryland Injured Worker's Insurance Fund ("IWIF") and the Department of Labor's Office of Worker's Compensation Programs ("OWCP). Medicaid, Medicare, the private insurance companies and the employee benefit plans are "health benefit programs" as defined in 18 U.S.C. § 24(b).

7. Medicaid was a government-sponsored health insurance program for eligible low-income and needy individuals, such as children and the disabled.

8. Medicare was a federally-funded health insurance program designed to provide medical care to eligible persons known a "beneficiaries" who were primarily individuals over the age of 65, or individuals who were blind or disabled. Medicare was administered by the Health Care Financing Administration ("HCFA"), later called the Centers for Medicare and Medicaid Services ("CMS"), an agency of the United States Department of Health and Human Services ("HHS").

## THE BILLING FRAUD

Fraudulent Use of CPT Code 99214

9. When the Doctor examined patients at the Hyattsville office, he almost always instructed Ellis and others to submit claims for reimbursement to the various health benefit programs utilizing CPT Code 99214. That code is defined by the AMA as follows:

> Office or other outpatient visit for the evaluation and management
> of an established patient, which requires at least two of these three
> key components: a detailed history; a detailed examination;

       medical decision making of moderate complexity. Counseling and/or coordination of care with other providers or agencies are provided consistent with the nature of the problem(s) and the patient's and/or family's needs. Usually, the presenting problem(s) are of moderate to high severity. Physicians typically spend 25 minutes face-to-face with the patient and/or family.

10. The Doctor communicated to Ellis that he knew that the claims submitted using the 99214 code were false and fraudulent. The Doctor almost never saw any patient in Hyattsville for 25 minutes or conducted a detailed examination that would permit the use of the 99214 code. The Doctor typically saw each patient in Hyattsville for fewer than five minutes, and virtually never performed more than a rudimentary examination on any patient.

11. The Doctor regularly instructed Ellis to submit claims using the 99214 code when patients visited the Hyattsville office merely to pick up prescriptions and were not seen by the Doctor.

12. The Doctor further instructed Ellis on multiple occasions to submit claims using the 99214 code for individuals who were never patients of the Doctor and never received any medical services from the Doctor.

13. Ellis and the Doctor had conversations regarding the improper submissions of the 92214 CPT code. Both Ellis and the Doctor understood that the 92214 code was inappropriate and excessive for the services that the Doctor had actually provided to the patients in whose names the 92214 code was submitted. Notwithstanding their mutual acknowledgment that the 92214 code was inappropriate, the Doctor continued to direct Ellis to submit claims for payment using that code.

Fraudulent Use of CPT codes 64483 and 64484

14. The Doctor regularly instructed Ellis to submit claims for reimbursement to the health benefit programs using CPT codes 64483 and 64484 relating to patients who were seen at the Hyattsville office. Those codes relate to transforaminal epidural injections ("TEI"). A doctor who performs TEI must use fluroscopic image guidance and also must use a four-inch needle to perform TEI.

15. The Doctor never performed TEI in Hyattsville. He did not have equipment to perform fluroscopic image guidance, nor did he possess four-inch needles.

16. The Doctor was aware that he did not perform transforaminal injections in Hyattsville and that the submission of claims for reimbursement using CPT codes 64483 and 64484 were false and fraudulent.

17. Nonetheless, the Doctor regularly directed Ellis to submit claims for reimbursement to the health benefit programs using CPT codes 64483 and 64484.

Fraudulent Use of CPT Code 72265

18. The Doctor regularly instructed Ellis to submit claims for reimbursement to the health benefit programs for reimbursement using CPT code 72265. That code relates to a myelography procedure. A myelography is an X-ray, CT, or MRI scan of the spinal canal and cord following the injection of dye into the spinal region. The procedure is usually performed at a hospital or other medical facility by a radiologist or neurosurgeon. Myelographies are virtually never performed by pain management doctors in an office setting.

19. The Doctor did not perform myelography procedures, nor did he possess the necessary equipment in the Hyattsville office to perform myelographies. The Doctor acknowledged to Ellis that he knew and understood that he did not perform myelography procedures.

20. Nonetheless, the doctor regularly instructed Ellis to submit claims for reimbursement to the health benefit programs using CPT Code 72265.

      *      *      *

21. On or about February 14, 2006, in the District of Columbia and elsewhere, in a matter involving a health care benefit program, the defendant, Lakeal Ellis, knowingly and willfully made a materially false, fictitious and fraudulent statement and representation in connection with the delivery of health care benefits, items, and services; that is, the defendant, while employed as an office manager, knowingly and willfully submitted a false and fraudulent reimbursement claim for CPT code 99214 to OWCP for OWCP Patient S.L.B. seeking reimbursement in the amount of $150.

            JEFFREY A. TAYLOR
            United States Attorney for the
            District of Columbia


      By: _____
         GLEN DONATH
         Assistant United States Attorney
         Fraud & Public Corruption Section
         555 4th Street, NW
         Washington, D.C. 20530
         (202) 514-9555